Thank you. May it please the court, my name is Nancy Tenney and I represent the appellate in this case, Mr. Beasley. Would you distinguish your case from Mr. Alderman's case, forgetting about the sentencing issue? Well, the issue in Mr. Beasley's case is really quite narrow. It's simply whether Washington's first degree theft statute constitutes a crime of violence under the residual clause. And as this court has addressed previously in the Jennings case, the first prong of that analysis looks at whether there's a potential risk of harm or physical injury. And the Jennings case did decide that. However, in Begay v. United States, the court added, whether it's a refinement or a second prong, it requires further analysis as to whether the underlying offense is similar in kind to the enumerated offenses. Why isn't this similar to burglary in a dwelling? I understand that your argument is that it's not necessarily a violent offense. Robbery is for the violent offense. However, burglary in a dwelling strikes me as perfectly analogous in that violence is not an element of the crime with no violence whatsoever. Most of the perpetrators who commit the crime prefer that there be no violence and do their best to avoid violence. Yet there's absolutely no question in the Supreme Court's analysis that burglary in a dwelling is one of the listed crimes that they say the catch-all phrase crimes have to be like. So why isn't this like burglary in a dwelling? Well, certainly Congress took great care in choosing the crimes that it specifically has listed both in 18 U.S.C. 924E as well as in the guidelines to specify burglary as the type of offense that they feel is appropriate there. And simply comparing the degree of risk is what Begay says we need to go further than. I think what distinguishes a pickpocket from a burglary in part is simply the degree of intrusion. With a pickpocket it happens typically in an open public area. One intrusion is into somebody's house and the other is into his pocket. The pocket is actually closer to the physical person than the house. If a burglar were in the house and the homeowner had access to a weapon, there might very well be a shooting. However, if the homeowner did not have access to a weapon, he might just hide in a closet and do his best to avoid it. The pickpocketing involves a touching. Taking something like a purse or a camera from somebody's neck involves such a high degree of touching that it might invoke an instinctive violent reaction. It seems that to the degree that the crimes are any different, the pickpocketing is more likely to precipitate violence. Well, I would respectfully disagree, Your Honor. In the case of a pickpocketing, it's in an open public place where the pickpocket Somebody grabs my Leica off my neck in an open public place, you think I'm just going to smile and say, oh, I'm so happy you like photography? I believe, Your Honor, that if it was taken by force from your neck, that that would constitute a robbery. There's any degree of force, however slight, elevates theft to a robbery. And the clever thief has the scissors and cuts the strap the way they sometimes do with ladies' purses in the hope that I won't notice. And typically it is a crime of stealth where the pickpocket is taking all steps possible to use, to have as little contact as possible and to not be noticed. But obviously, the difference between robbery and theft from a person must mean that the violence involved is something other than the physical force of taking the thing. In other words, if that were true, they'd just collapse onto each other. If you put a hand in somebody's pocket, in some sense you're using force. But that's not the force we mean with regard to a robbery. That's correct. The force is against the person as opposed to... Well, if I was hypothetical, that wouldn't be the force either. I mean, if you take something off somebody's neck, that's not force in this sense. If it were, you're just collapsing the two crimes. Well, when Congress in its legislative history in some of the cases discuss burglary and the risk inherent in a burglary, it's entering into a person's residence where all of their a much greater degree of intrusion to actually enter the private space of an individual's home. As a general matter, I don't know if this matters, but it might. I don't read the statute as meaning that the serious physical injury, risk of physical injury to another is that the person that you're attacking might hurt you. In other words, it's to another, and I assume the another means somebody, not the criminal. I would assume that as well, Your Honor, that it would be the risk that the offender creates to another. I don't know if it can be sorted out that neatly. I mean, once the homeowner starts drawing on or shooting at the burglar, the burglar may very well be shooting back. It's a violent defray, and who knows who's going to get hurt. That is correct. Or it might be somebody in the apartment next door. And, in fact, one of the risks inherent in burglary that the courts have distinguished from other potential risks is that once inside a home, it's less likely that police will be called to intervene, and it's more likely that if a burglar is encountered in the home that the matter will be resolved there, whereas in a cook pot... Your argument depends on limiting burglary in a dwelling to home invasion burglaries. In England, where people aren't allowed to have guns, most of the burglaries, the burglary in the dwellings now are home invasions, because that way they can take what people have in their wallets, as well as what they have in their houses. In America, most of them, most of the burglary in the dwellings, there's nobody home, which is the whole idea. Well, in terms of the risk that the offender is courting at the time of the crime, a burglar is entering a home, is taking a much greater risk... But the whole...I mean, if we're talking risks, we have controlling precedent. So the only question is whether Begay, by adding this language about purposeful, aggressive, and violent, has added something that we need to deal with separately. So let's not talk risks. We need to talk about purposeful, aggressive, and violent. It's a mysterious rule, because violent is, by definition, not an element of these crimes, because that would be in Part 1. So it's in Part 2, and it is a little hard, as we've said, to know what they mean by violent. What do you think they mean by violent as an element of Subsection 2? I agree that the test is still somewhat unclear. I think what is helpful is to look at the purpose of the definition. The definition is defined to single out for enhanced punishment, in the case of the Armed Career Criminal Statute, a 15-year mandatory minimum. And so Congress is trying to single out those offenders who pose the greatest risk should they possess a firearm. They're looking for the types of crimes that are characteristic of the most dangerous type of offender. And that is where saying that a three-time pickpocket, who is later found in possession of a firearm, is that person deserving of 15 years in prison. Well, it does seem very different than a DOI. I mean, somebody who's drunk and driving and happens to have a gun, there's no connection between the drunk and driving and the gun. Here, I mean, if somebody is pickpocketing and has a gun and something goes wrong, you know, the notion that they may use the gun is not too weird. But again, looking at the typical offense, the typical pickpocket, typically the individual is not armed. It's generally a very brief encounter. Well, here we're dealing with somebody. I mean, if you're looking at it the way you're looking at it, we're dealing with somebody who, by definition, is armed. I mean, that's the problem. The problem is you have a guy who now has a gun. The question is, if he has a gun and he has a propensity to do what he did before, is he a dangerous person? I mean, that's one way to look at the question. Although, looking at what he's done before, if that is a theft and a pickpocket, it was, by definition, and under Washington law, a nonviolent taking, where no force was used. But so are most burglaries. But again, I believe that burglary poses a much greater danger simply by... Usually the victim's not there. With the pickpocketing, the victim's there. Again, I believe that allows the offender to have better control over the situation and to not be risking the unknown when entering into a dwelling. Thank you, Counselor. Your time has expired. We'll hear from the government. Good morning, Your Honors. I think in trying to give some substance to the purposeful, violent, and aggressive language that Begay uses, it might be useful to look at the two reported cases from the Supreme Court and this Court that have actually tried to apply that case post-Begay. The Supreme Court's Chambers decision, again, involved a failure to report. Again, it's a crime of inaction. And that was why the Court was saying this clearly can't be purposeful, violent, or aggressive crime, because the issue was basically doing nothing. Similarly, in this Court's Christensen decision, which involved a state crime of statutory rape, the reason why it couldn't categorically be determined to be a violent felony was because the crime could still occur if it was a consensual encounter between the defendant and the victim. So, again, in that case, if it's a consensual encounter, it could in no sense be seen to be a violent encounter under any definition you might think of violence. Those are the extreme cases. I think that perhaps, apart from looking at burglary, we might want to look at another one of the exemplar crimes, which is extortion. Extortion is simply a threat, and it doesn't even have to be a threat of violence. So — Well, it's very hard to figure out what extortion is doing there for that reason. It's difficult to divine a rational pattern to all four of those exemplar crimes to be perfectly blunt. I don't know if it is, as long as you accept that the violence may be initiated by the victim. There's an interest in the public peace, regardless of who starts it. With both burglary in a dwelling and extortion, it may be that the odds regarding who starts the violence may be that the victim initiates it. That's possible with respect to those two crimes, and not to argue against myself. The victim may not finish it. That's true. And not to argue against myself, but use of explosives and arson are not necessarily directed at a victim. Usually they're directed at property. But yet, nevertheless, those are crimes I think we can all, from a certain intuitive sense, understand why arson and use of explosives can begin to be purposeful and violent and aggressive. Well, with arson, you think nobody's there, but you never know for sure. Well, that's true. But I think with the latter two crimes, with the extortion and the burglary, again, it's conduct that's directed toward the person, toward the victim. And that, I think, is what we really need to focus on. That's what Begay was focusing on. Begay involved a risk that was a generic risk to anyone. A drunk driver gets on the road, he's a risk to anyone who happens to be on the street. To fall within the residual clause, to be similar to the four exemplars, the crime needs to be in some way focused on the victim. And that's what we have here. We have a crime that is directed toward the victim. And that, I think, is what the Begay modification is intended to do. It's intended to cabin the residual clause in that manner, to just ensure that we're not just looking at the risk to the public at large. We're looking to... But, I mean, I think, because Christensen has a specific victim, it just isn't a victim in the sense that these crimes suggest. Well, that's correct. But Christensen, again, the court made clear that the problem with Christensen was that a statutory rape can be in a consensual encounter. In a consensual encounter, in a categorical sense, you can see why if it's consensual it wouldn't, it would sort of be outside. I'm just disputing your attempt to make sense of all this in a unitary fashion because I don't think there's a unitary answer. That may be, but I... I think your problem may be a little different. You know how in philosophy they have intentional and extensional definitions? Yes. Some things you can have a formula that defines the term. Some things you really can't. All you can do is have a bunch of examples and then say other things that are like the examples. And the Supreme Court seems to have gone for that extensional approach here. And I don't know if we can succeed in reducing it to a formula that works. I'm not sure that you can reduce it to an A plus B equals C type formula, but I do think that you can, as the court suggested, you can look at the crimes and see, and try to at least define what is common amongst all of them. Well, what about not trying to define what is common amongst all of them and instead saying, is this like all of them, or is it like one of them, so that we should treat it under a justem generis, things of the same kind, as being like. And if it's like burglary of a dwelling, the statutory phrase, then we're done. We don't have to come up with a formula. I believe that is an interpretive scheme that certainly could work, and I would suggest prior to Breguet that is the scheme that has, since James, has sort of been applied, is you try to find. After Breguet, since they say use a justem generis, things of the same kind, why shouldn't we and can't we do that? My concern is that every time somebody tries to come up with a formula, including the Supreme Court in Breguet, when they say violent, but they don't mean violent because burglary of a dwelling is ordinarily not violent and is intended not to be, the formulas fail. So why not just skip it and just look for analogous crimes by the facts? I think that's certainly a reasonable approach to take. Frankly, I'm sort of hung up on trying just to give the Supreme Court their due. We have to have a formula, and I am wary of it because so far I haven't seen a good one, including the Supreme Court's own. It doesn't fit their own reasoning or the crimes listed. So I'm wondering why do you think we have to come up with a formula? Perhaps I'm not articulating it clearly then. My position is not that I think that you have to have a formula. I guess I was simply trying to divine from the exemplar crimes what that language in Breguet means, to give it some meaning because it must mean something. And it does mean something in the context of the facts of Breguet. It's easy to understand how that language applies when you apply Breguet to its facts. Well, the facts, it's easy to say, drunk driving is not like burglary of a dwelling, extortion, and so forth. It's fairly easy to say that, yes. And I think that... Well, the one thing we have to know, I guess, is that... First of all, one answer to why we have to do this is because the Supreme Court said we did. So the next question is what do they mean? And it seems obvious that violent can't mean violent in the ordinary sense of the word. It means something different because, as we've been saying over and over again, burglary doesn't, or an extortion, don't necessarily involve violence in any ordinary sense of the word. So it appears they mean something else by violent. What do you think they mean? I think that's correct. And I would also point out that if you actually read Breguet, when they first introduced the terms violence and aggressive, they do so in scare quotes. So it's kind of a tip-off in scare quotes. Quotation marks. Quotation marks. Sort of signifying that they do mean something beyond what you would consider to be their common sense meaning. And, again, I think that... similar to the exemplar crimes in that it's directed at somebody. That it's not just risk per se. There has to be something about the conduct, the criminal conduct underlying the crime, that is more than just a strict liability or a reckless type conduct. And I think that's really... Different things. First, you're talking about the focus, and secondly, you're talking about the intent. They're not the same. In other words, I do think that perhaps the best reading of all this, the one thing that seems consistent in all their examples is that they're not purposeful. And they're not intentional. But that's different than they're not focused on somebody. When I... I'm, again, not being sufficiently specific. When I say not focused, I mean... I'm using that as a shorthand for purposeful. Conduct that's directed towards someone, that's, again, purposeful conduct. Crime thriving is not purposeful in that sense of the word. It's that you're not directing your risk-creating conduct toward anyone. It's not a requirement at all. It's a strict liability crime. Well, that's correct. Some courts have characterized it as recklessness, but I would agree that it's strict liability. And that's what the Court's concerned with in Begay. And I think that we need to read Begay in its context. To try to strip it too far and apply it to crimes that are clearly purposeful, intentional crimes, creates more problems than it solves. And I think that we really need to just sort of look at the exemplar crimes as what they are, exemplars. And we just have to make a judgment about whether or not a crime is sufficiently similar to those to fall within the residual clause. Thank you, Counselor. Thank you, Your Honor. The case just argued will be submitted for decision. And the Court will hear argument next in United States v. Martinez-Quesada.
judges: O'scannlain, Kleinfeld, Berzon